UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH EMMA-ANN JACKSON, | Case No. 1:23-cv-00546-HBK |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[2] |
| v. | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | (Doc. Nos. 14, 16) |

Elizabeth Emma-Ann Jackson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 14, 16). For the reasons stated, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the

---

[1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social Security. (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 6).

Commissioner's decision.

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income on April 16, 2020, alleging a disability onset date of January 1, 2020. (AR 144-53). Benefits were denied initially (AR 55-65, 80-84) and upon reconsideration (AR 66-79, 92-98). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on December 15, 2021. (AR 34-54). Plaintiff testified at the hearing and was represented by counsel. (*Id.*). The ALJ denied benefits (AR 17-33) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 30 years old at the time of the hearing. (*See* AR 166). She completed eleventh grade. (AR 43). She lives with her parents and four siblings. (AR 40-41). She has no past relevant work. (AR 28). Plaintiff testified she cannot work because she cannot adjust to new things or "be physical" without her body "jerking or twitching or [her] falling down, [with] seizure-like movements." (AR 41-42). She testified that she does not help with grocery shopping, housework, cooking and laundry. (AR 42). Plaintiff reported that she needs help with all self-care, including bathing, using the toilet, brushing her teeth and hair, and dressing herself. (AR 44). She testified that seizure-like episodes can be triggered by bending, change of scenery, being around people, doing physical activities, heavy lifting, and going up and down stairs. (AR 44-45). During these episodes she "fall[s] down and [her] body's all over the place," they can last for "hours" and are "constant" throughout the month, they "definitely" happen more than 15 times a month, and after these episodes she is in bed for up to three months. (AR 45). Plaintiff testified that she takes medication and sees a therapist for depression and anxiety, she has trouble concentrating, she has anxiety attacks, and she has trouble sleeping. (AR 46-48).

////

### III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.  SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 16, 2020, the application date. (AR 22). At step two, the ALJ found that Plaintiff has the following severe impairments: conversion disorder with pseudo seizures, anxiety, depression, posttraumatic stress disorder, and obesity. (AR 22). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 22). The ALJ then found that Plaintiff has the RFC to

> perform medium work as defined in 20 CFR 416.967(c), except she can never climb ladders, ropes and scaffolds; and never work at unprotected heights or with dangerous moving machinery or operating a commercial vehicle. Further, the claimant is limited to simple (as defined in the D.O.T. as SVP ratings 1 and 2) repetitive tasks in a work environment that is not fast paced (e.g., work that [sic] production rate pace) with no interaction with the general public [and] no more than occasional interactions with co-workers and supervisors in a job where changes in work settings and processes are few.

(AR 24). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 28). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

including laundry worker and dishwasher.  (AR 28-29).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since April 16, 2020, the date the application was filed.  (AR 29).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and
2. Whether the ALJ properly assessed the RFC.

(Doc. No. 14 at 16-26).

## VII.   DISCUSSION

**A. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that

the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 25). Plaintiff argues the ALJ "failed to set forth reasons, consistent with and supported by the evidence, for discounting Plaintiff's complaints of symptoms relative to the severe impairment of conversion disorder." (Doc. No. 14 at 22-23). As noted by Plaintiff, the ALJ discounted her symptom claims, in part, because Plaintiff "acknowledged a modest range of activities including attending appointments, shopping online, socializing online, watching movies and documentaries, helping around the house, getting rides from others, [and] spending time with her family including caring for her younger siblings. This level of activity, though not conclusive to any issue, is consistent with the [RFC] as found." (*Id.* at 23 (citing AR 25)). Plaintiff argues this finding fails to reflect that her "day to day activities varied depending on the severity of the symptoms she might realize on any given day." (Doc. No. 14 at 24) ("some days she stayed in bed all day, due to fatigue resulting from seizure-like activity," but "on other days Plaintiff testified that she was able to socialize with family and care for her siblings").

A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). However, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this finding, the ALJ cites evidence throughout

7

the decision of Plaintiff's ability to help with chores, work for her family, walk daily, take care of her younger siblings on a consistent basis including her 8-month-old baby sister, and go on a vacation with a friend.  (AR 26, 248 (reporting she did not graduate from high school because her mother is disabled and she had to take care of her siblings), 304 (reporting she is a "second mother" to her siblings), 319 (reporting working for her family and getting into shape), 329 (reporting she is busy during the day helping family with chores and taking care of baby sister), 381, 389, 396 (reporting that she likes being home alone when her family is out of town), 442 (reporting she took a vacation with a friend and it "made her feel like she is ready to get her own place if she is able to get SSDI"), 459.  Thus, regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find Plaintiff's documented activities, including the ongoing reports of caring for her younger siblings, was inconsistent with her allegations of entirely debilitating functional limitations due to conversion disorder, such as having to lie in bed all day for up to three months at a time, and requiring assistance from her family even to wash her hair and get dressed. (AR 44-45); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  This was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims related to her claimed impairment of conversion disorder.

       While not raised by Plaintiff, the ALJ also noted "[n]o single factor mentioned here is alone conclusive on the issue to be determined, but when viewed in combination with and in conjunction with the medical history and examination findings they suggest that the claimant is not as limited as she claims."  (AR 27).  The Court may decline to consider this reasoning as it was not identified or challenged by Plaintiff in her opening brief.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  Regardless, medical evidence is a relevant factor in determining the

8

severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence). Here, as noted by Defendant, the ALJ found Plaintiff's allegations were not consistent with the medical evidence including euthymic mood with full-range affect, organized thought process, intact memory, good judgment and insight, coherent and relevant speech, normal cognitive functioning, unremarkable motor activity, and no deficits on electromyogram. (AR 25-27, 241 (noting normal EEG and "semiology not that of a typical epileptic event"), 294 (doing well, denies side effects), 349, 352, 358, 360, 374, 380, 395, 440-41, 468-70 (feeling better since starting Zoloft), 473-74 (doing well, denies side effects), 478-49 (doing well and "she has no major complaints or concerns"). The ALJ also considered examination findings of depressed and anxious mood, and an observed seizure like episode during a strength evaluation that lasted 10-15 seconds, during which her vital signs remained stable, she had no postictal phase, no bladder or bowel incontinence, and no tongue biting. (AR 26-27, 352-53, 241, 372, 441). Thus, the ALJ explicitly recognized medical evidence in the record that could be considered more favorable to Plaintiff, and nonetheless found the severity of her symptom claims were not consistent with her longitudinal medical history and examination findings. *See Burch*, 400 F.3d at 679. This was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. RFC**

The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the

ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

First, Plaintiff argues the ALJ had "no reasonable basis for the limitations in [the] RFC" because (1) he found the state agency opinions as to Plaintiff's claimed mental health limitations were unpersuasive; (2) he "disagreed with Plaintiff's own assessment that she was unable to perform any work due to the frequency seizure like activity attributed to the severe impairment of conversion disorder"; and (3) he was "unpersuaded" by Plaintiff's mother's assessments that Plaintiff's conversion disorder left her unable to "move a lot," became "too tired to function," and resulted in an inability to handle stress without experiencing an "attack." (Doc. No. 14 at 16-17 (citing AR 28, 170, 172, 176)). As an initial matter, Plaintiff does not challenge the ALJ's finding that her mother's third-party witness statements, when "viewed within the context of the entire record, including the medical reports . . . do not alone support a conclusion that [Plaintiff] is incapable of working within the constraints of the established [RFC] assessment." (AR 25); *Carmickle*, 533 F.3d at 1161 n.2 (court may decline to consider issues not raised with specificity in plaintiff's opening brief). In addition, as discussed in detail supra, the ALJ properly discounted Plaintiff's "own assessment that she was unable to perform any work" due to conversion disorder. (*See* Doc. No. 14 at 16; AR 25-27).

Finally, the ALJ provided a detailed review of the medical evidence including mental examination findings and the opinions of the state agency reviewing physicians, in assessing Plaintiff's RFC. (AR 25-28). Plaintiff does not cite, nor does the Court discern, any specific mental functional limitations in the medical record, including the medical opinions, that were not properly accounted for the in the assessed RFC. (*See* Doc. No. 16 at 8 ("Here, no medical sources suggested that Plaintiff would have any difficulty performing any basic work activities from a mental health point of view.")). Thus, Plaintiff has not shown that the ALJ committed harmful error in formulating the "mental RFC" or in considering the medical opinion evidence. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); *Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did

not rely on her 'lay interpretation' of medical evidence. Rather, the ALJ simply summarized the medical evidence from [physicians]; she did not interpret any x-rays or test results directly. ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."); *see also Lamas v. Saul*, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020)) ("The Court finds that the ALJ's error in this case was harmless [as] [t]he limitations that the ALJ included in the RFC pertaining to Plaintiff's mental impairments were more restrictive than those to which the medical opinions of record opined, yet the ALJ nonetheless found that there would be work available with those more stringent limitations."); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("overinclusion of debilitating factors is harmless").

Second, Plaintiff argues the "mental RFC" did not adequately account for limitations based on Plaintiff's severe impairment of conversion disorder because the ALJ "did not logically connect the effects of [Plaintiff's] conversion disorder due to the RFC limitations. For example, there is no evidence that the RFC would accommodate seizure like activity that occurs as a result of conversion disorder." (Doc. No. 14 at 18). This argument is inapposite for several reasons. First, in support of this argument Plaintiff relies entirely on her own subjective complaints that she suffers from "body jerking," twitching, and "falling down." (Doc. No. 14 at 18 (citing AR 42, 44)). As discussed above, these symptom claims were properly discounted by the ALJ. Similarly, as noted by Defendant, despite Plaintiff's arguments that the ALJ failed to account for "absenteeism," "Plaintiff did not testify that she would miss work more than two days per month, or would be off-task, or would require four breaks of fifteen minutes per day – these appear to reflect instead her attorney's translation of Plaintiff's testimony []. The ALJ had no obligation to accept vocational expert testimony that depended on limitations that the record did not support, or limitations that Plaintiff's attorney concocted for questioning." (Doc. No. 16 at 15); *but see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"). Finally, and perhaps most notably, the ALJ specifically found the opinions assessed by the state agency reviewing physicians "that [Plaintiff] has severe physical impairments with epilepsy/pseudo seizures and can never climb ladders, ropes and

scaffolds; and should avoid concentrated exposure to hazards, persuasive as this is consistent with medical records as a whole as well as the physical examination findings showing assessments of pseudo seizures and obesity." (AR 27 (also finding that claimant has an exertional limit of medium work "in light of the totality of the evidence, including the physical examination findings and the type and degree of treatment needed.")). The ALJ properly incorporated these well-supported limitations due to the claimed impairment of conversion disorder into the assessed RFC.

For the foregoing reasons, the Court finds no error in the ALJ's assessment of the "mental RFC" based on all relevant evidence in the record. (AR 24-28); *see Bayliss*, 427 F.3d at 1217.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims and properly assessed the RFC. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 16) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   June 3, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE